Maria CUNHA,

v.

CAROL CABLE COMPANY, INC.

No. 93–99–M.P.

Supreme Court of Rhode Island.

Dec. 10, 1993.

Mary Ann Violette, Rappoport, Audette, Bazar & Farley, East Providence, for plaintiff.

Tedford Radway, Cranston, for defendant.

OPINION

LEDERBERG, Justice.

This case comes before us on the petition of Maria Cunha (Cunha) for a writ of certiorari seeking review of a final decree of the Workers' Compensation Court's Appellate Division (Appellate Division). On January 28, 1993, the Appellate Division affirmed the trial court's denial of benefits to Cunha be-

cause of her failure to prove loss of earning capacity. For the reasons stated herein, we remand this case to the Appellate Division for further findings of fact and conclusions of law.

On November 17, 1989, Cunha injured her neck and right shoulder while working for Carol Cable Company (respondent). On that same day Cunha informed respondent of the incident leading to her injury. The respondent made arrangements for Cunha to see Dr. Ira Singer (Singer) during the afternoon of November 17, 1989. Relying on Singer's advice, Cunha returned to work on November 18, 1989, limiting her activity to light-duty tasks. Cunha stipulated that she continued working for respondent, performing light-duty tasks and earning the same rate of pay, from the date of her injury until the plant permanently closed on November 30, 1989.

Thereafter, in December 1989, Cunha, still bothered by the injury to her neck and shoulder, sought the medical advice of Dr. Robert K. Hillier (Hillier), a specialist in orthopedic surgery and rehabilitation. Hillier testified that after examining Cunha and identifying a disc herniation at the C5–6 disc, he determined that Cunha was partially disabled. He then prescribed an antiarthritic, anti-inflammatory drug and physical therapy. Cunha then made her first application for workers' compensation benefits. After a two-day hearing, however, the Workers' Compensation Court denied Cunha's first petition for benefits, concluding that she had failed to satisfy the three-day-incapacity requirement of G.L.1956 (1986 Reenactment) § 28–33–4.

Cunha continued her physical therapy throughout 1990. According to Hillier, Cunha's condition started to worsen in September 1990 and got progressively worse into the spring of 1991. Hillier also stated that because of the symptomatic deterioration of Cunha's condition, on May 1, 1991, he performed an MRI that revealed that Cunha not only had a disc herniation at the previously identified C5–6 location, but also suffered from a central disc herniation at C4–5. Based on these discoveries, Hillier revised his previous determination of partial disability and

concluded that Cunha was totally disabled from any work as of May 14, 1991. Hillier then referred Cunha to a neurosurgeon for possible surgical treatment.

Relying on Hillier's revised diagnosis, Cunha again applied for workers' compensation benefits on August 29, 1991. A pretrial order was entered on December 16, 1991, denying Cunha's claim. This pretrial order concluded that Cunha did not sustain an injury on November 17, 1989. Cunha thereafter exercised her right to a full trial. At trial the parties stipulated to the fact that Cunha was injured at work on November 17, 1989. Cunha further stipulated that she would have continued working had respondent not closed the plant in November 1989. In addition, Cunha also introduced the deposition of Hillier as outlined above. The only other evidence admitted at trial was the decree and transcript from the prior hearing conducted in 1990.

On February 18, 1992, the Workers' Compensation Court entered a decree denying Cunha's claim for benefits. This decree also made the following findings of facts:

"1. That the petitioner has not proved by a fair preponderance of the credible evidence that she sustained a loss of earning capacity.

"2. That the petitioner continued to work until the plant was closed on November 30, 1989 and a stipulation entered reflects that she herself concedes that she continued to remain at work and earned wages equal to or in excess of those earned at the time of her injury of November 17, 1989.

"3. That although she has not suffered a loss of earning capacity and there is no point from which I can measure a loss of wages, the petitioner is entitled to medical care."

On appeal the Appellate Division summarily affirmed the trial court, concluding that the record contained legally competent evidence upon which the trial court decree was based.

Cunha argues that the trial judge erred as a matter of law in denying her benefits for total disability. According to Cunha, the un-

contradicted medical evidence demonstrates that she became totally disabled as of May 14, 1991 because of her work-related injury on November 17, 1989. Therefore, Cunha contends, as of May 14, 1991, she was physically unable to earn her preinjury wage and thus had suffered a compensable loss of earning capacity. In addition, Cunha, relying upon *Morgan v. Davol, Inc.,* 458 A.2d 1082, 1083 (R.I.1983), argues that she met the three-day-earning-incapacity requirement of § 28–33–4. Cunha interprets *Morgan* as standing for the proposition that an employee meets the incapacity requirement of § 28–33–4 when the employee is incapacitated on *any* three consecutive days. Therefore, according to Cunha, when she became totally incapacitated as of May 14, 1991, and continuing, she satisfied the requirement, even though she was unemployed at the time and had continued working immediately following her work-related injury.

In reviewing Cunha's claim, we are guided by the standard articulated in G.L.1956 (1986 Reenactment) § 28–35–30. This standard requires us to determine whether the trial judge's decision is tainted by any errors of law, § 28–35–30, or whether the findings of fact reached by the trial judge are supported by legally competent evidence. *Maynard v. Rhode Island Hospital,* 536 A.2d 532, 534 (R.I.1988). In order for us to conduct an intelligent review, however, the legal reasoning and factual findings underlying the trial judge's decision must be sufficiently articulated in the decree. *Fitzpatrick v. Pare,* 552 A.2d 1185, 1186 (R.I.1989). *See also* § 28–35–27(2), as amended by P.L.1990, ch. 332, § 5 ("judge shall enter a decree upon the

decision, which shall contain findings of fact"); *Walsh–Kaiser Co. v. Della Morte,* 76 R.I. 325, 329, 69 A.2d 689, 690 (1949) (decree summarizing all the findings of fact into one inclusive finding is defective); *Dodge v. Barstow Stove Co.,* 40 R.I. 191, 195, 100 A. 245, 246 (1917) (decree not containing findings of fact is a nullity).

In the instant case the trial court incorporated only three findings of fact into the decree. One of these findings was the ultimate conclusion that Cunha did not suffer a loss of earning capacity. Review of the decree, however, reveals that we are unable to reach the merits of Cunha's contentions because the findings reached by the trial judge are insufficient to support the ultimate conclusion. Thus, intelligent review of the trial court's decision is rendered impossible. *Fitzpatrick,* 552 A.2d at 1186.

· Accordingly, the case is remanded to the Workers' Compensation Court, Appellate Division, with our direction that it remand the case to the trial judge for findings of fact and legal determinations supportive of the decree that was entered. We retain jurisdiction, and on the completion of these procedures, the matter will be returned for our consideration.

FAY, C.J., did not participate.